IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES W. ROBINSON,  *
    Plaintiff,

    v.  *  CIVIL ACTION NO. DKC-11-556

SGT. R.L. DAVIS,
    Defendant.  *

\*\*\*

## MEMORANDUM OPINION

Pending is Defendants Sgt. R. L. Davis's Motion to Dismiss or for Summary Judgment and Plaintiff's response. ECF Nos. 13 & 15. Upon review of papers and exhibits filed, the court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

### Background

Plaintiff alleges that on July 16, 2010, he was given permission to sit on a bench in the medical department holding area. He claims that a drunk Defendant Davis charged into the area, screaming at the top of his voice, calling Plaintiff names, and asking who permitted Plaintiff to sit on the bench. Plaintiff states that when he did not respond quickly enough Davis "went nuts." He states that Davis handcuffed him and spat upon him. Plaintiff further alleges that he later learned that Davis was trying to place a "hit" on him and that on February 7, 2011, Davis told Plaintiff his "days are numbered." ECF No. 1. As relief, Plaintiff seeks to file assault charges against Davis, be permitted to assault Davis in the same manner he was assaulted, have Davis fired, receive compensation for having been spit upon, and have a system put in place regarding for civilian review of prisoner complaints against corrections personnel. *Id.*

The uncontroverted records indicated that Davis has been employed as a correctional officer for eighteen years. On July 16, 2010, he was assigned as the Officer in Charge ("OIC") of the medical section at the Western Correctional Institution ("WCI"). As OIC, Davis oversaw the

operation of the infirmary, sick call, Special Observation Housing, medical passes, and "pill call". ECF No. 13, Ex. A, Davis Declaration.

On July 16, 2010, at approximately 9:00 p.m., inmates from Housing Unit 5 were brought to the medical unit to receive their medications. Plaintiff entered the section and sat down in the holding cell. Davis avers that this action violates policy as inmates are expected to stand in line, receive their medication, and immediately upon receipt of the medication leave the area. Davis avers that it in his experience inmates attempt to hang around the area in an effort to socialize with their friends. Such behavior is a possible security threat as contraband or information detrimental to security may be passed between inmates at this time. Accordingly, correctional staff are to keep the inmates standing in line and moving during medication distribution. *Id*.

Davis ordered Plaintiff to get up and get in line. Plaintiff responded in a confrontational manner saying, "Fuck you, bitch. I can sit here as long as I want." Davis issued a second order to get up and get in line to which Plaintiff responded, "Fuck you, bitch. Make me." At that point, Davis entered the holding cell. Plaintiff stood up with his fist clenched and said, "Come and get your ass kicked, bitch." Davis again ordered Plaintiff to leave the holding cell. Plaintiff did so without incident. Davis then placed handcuffs on Plaintiff and had him wait until the other inmates in line for medication left the area. Davis advised Plaintiff that sitting down in the holding cell was not permitted and Plaintiff would receive a notice of rule violation due to his behavior.[1] Plaintiff then received his medication and was escorted back to his cell. *Id*., Ex. A &B.

---

[1] Plaintiff was in fact charged and found guilty of inmate rule infractions as a result of this incident. Plaintiff's own witness called at the hearing did not support his version of events, i.e. that Davis was abusive toward him. ECF No. 13, Ex. B., p. 7-8.

Davis denies drinking alcohol on July 16, 2010, shouting at Robinson, spitting on him, or using abusive language. He also denies undertaking any effort to place a "hit" on Plaintiff and denies threatening Plaintiff on February 7, 2011. *Id.*, Ex. A.

**Standard of Review**

Under revised Fed. R. Civ. P. 56(a):

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to

3

confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, the court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

**Discussion**

    A.    Administrative Remedies

The court must first examine Defendant's assertion that Plaintiff's case should be dismissed in its entirety due to Plaintiff's failure to exhaust available administrative remedies. The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about

prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Plaintiff's allegations. His complaint must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 582 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure ("ARP") process provided by the Division of Correction to its prisoners. If this request is denied, the prisoner has ten calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office ("IGO"). *See* Md. Code Ann. Corr. Serv. §§ 10-206, 10-210; Md. Regs. Code title 12 § 07.01.03.

WCI's Administrative Remedy Coordinator avers that Plaintiff did not file any ARP complaining about Davis's conduct in 2010. *Id*., Ex. C. He further avers that on February 10, 2011, Plaintiff submitted an ARP (#WCI-0310-11) alleging Davis threatened to harm him. The ARP was assigned for investigation; however Plaintiff withdrew the ARP on February 14, 2011. *Id*.

In his response, Plaintiff states that on July 18, 2010, he filed an Emergency Request for Administrative Remedy directly with the Commissioner of Correction. ECF No. 15. Plaintiff has provided a Memorandum sent to him on July 28, 2010, by the Division of Correction, HQ, ARP/IGP Coordinator, acknowledging receipt of his request for administrative remedy and advising him that his request was not accepted for processing because he had failed to follow proper procedure by filing the complaint with the Commissioner of Correction. Plaintiff took no further action in response to this notification. He neither remedied his error by filing the complaint at the institutional level, nor did he respond to the memorandum to clarify his intent regarding the ARP. *Id*. Plaintiff further admits that he withdrew his February, 2011 ARP because he believed Defendant was no longer employed at WCI. *Id*. In light of Plaintiff's own representations it is clear that he failed to exhaust his administrative remedies as to each of his claims regarding Defendant. Thus, his Complaint shall be dismissed.

    B.    Excessive Force

Even if the court found Plaintiff had properly exhausted his available remedies, his claims would nonetheless fail. Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response.

*See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy*, __ U.S. __, 130 S. Ct. 1175 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Wilkens,* 130 S. Ct. at 1177. Plaintiff's complaint about the incident, filed close in time to the event indicates that the alleged spitting occurred while Defendant was in Plaintiff's face yelling at him to stand up, and Plaintiff indicates he did not respond quickly to orders to stand. ECF Nos. 1 & 15. Under such circumstances such "spitting" is clearly inadvertent and was not done maliciously or sadistically to cause harm. Moreover, "not all undesirable behavior by state actors is unconstitutional." *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995). Verbal abuse of inmates by guards, including aggravating language, without more, states no constitutional claim. *See Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (sheriff laughed at inmate and threatened to hang him); *Blades v. Schuetzle*, 302 F.3d 801, 805 (8th Cir. 2002) (racial slurs); *Cole v. Cole*, 633 F.2d 1083, 1091 (4th Cir. 1980) (no harm alleged from claimed verbal harassment and abuse by police officer). Accordingly, Plaintiff's allegation that Defendant spat upon him and verbally harassed him fails to state a claim.

### Conclusion

For the aforementioned reasons, Defendant's Motion, construed as a motion for summary judgment, shall be granted. A separate Order follows.

Date:   December 16, 2011                             /s/
                                                  DEBORAH K. CHASANOW
                                                  United States District Judge